Filed 11/14/22 P. v. Bermudez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| THE PEOPLE, | C095577 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CRF2013605, CRF2014612) |
| v. | |
| ADOLFO BERMUDEZ, | |
| Defendant and Appellant. | |

In 2014, a jury found defendant Adolfo Bermudez guilty of two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] and found true enhancement allegations that the assaults were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b).) Defendant appealed, and in 2020 a different panel of this court struck a one-year enhancement that the trial court had

---

[1] Further undesignated statutory references are to the Penal Code.

imposed due to defendant's prior prison term (§ 667.5, subd. (b)), and remanded the matter to the trial court for consideration of whether to exercise discretion conferred by Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill No. 1393) to strike a five-year enhancement that the court had imposed due to defendant's prior serious felony conviction (§ 667.5, subd. (a)). (*People v. Bermudez* (2020) 45 Cal.App.5th 358 (*Bermudez I*), disapproved of on other grounds by *People v. Valencia* (2021) 11 Cal.5th 818). On remand, the trial court denied defendant's motion to strike the five-year enhancement.

Defendant appeals from his second sentencing , claiming (1) the trial court abused its discretion when it denied his motion to strike the five-year prior serious felony enhancement because it applied the incorrect standard; (2) recently enacted Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill No. 333) requires reversal of the gang enhancements because the new law increased the proof requirements under the gang statute (§ 186.22); (3) remand is required for a new sentencing hearing pursuant to Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567), which changed the trial court's sentencing discretion; (4) the trial court erred by failing to provide him with a full resentencing on remand; and (5) we must strike a restitution collection fee pursuant to Assembly Bill No. 177 (2021-2022 Reg. Sess.) (Assembly Bill No. 177).

We agree with defendant that the trial court abused its discretion when it denied his motion to strike the five-year prior serious felony enhancement; we also agree that we must vacate the gang enhancements. We will remand for reconsideration of defendant's motion to strike the five-year enhancement and to provide the prosecution with the opportunity to retry the gang enhancement allegations in a manner consistent with the law as amended by Assembly Bill No. 333. Further, we will strike the restitution fee.

Because we have stricken part of the sentence, we direct the trial court to conduct a full resentencing as to all counts, so it can exercise its sentencing discretion in light of the changed circumstances. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) Defendant

2

will be able to raise his arguments related to Senate Bill No. 567 and any other new law that applies to him at resentencing. Based on our disposition, we need not and do not address defendant's argument that the trial court erred by not conducting a full resentencing on remand from his initial appeal.

## FACTS AND PROCEEDINGS

*Assault Case[2]*

The following facts are quoted from the opinion issued on defendant's direct appeal from his conviction. (*Bermudez I*, *supra*, 45 Cal.App.5th at pp. 364-365.) On April 4, 2013, the "victim was driving in Woodland, with his son in the car, when he saw a black Honda parked on the side of the road. As he drove by, the Honda suddenly accelerated, hitting him.

"Thinking he had been in an accident, the victim pulled over. The Honda collided into him a second time. The second impact was a 'T-bone,' taking off the front and back doors and breaking windows.

"The victim recognized defendant as the driver, testifying at trial: 'he looked at me when he crashed and then he flossed his tattoo on his head and . . . I recognized him.' Defendant had turned, pointed to the back of his head, and yelled 'EST,' which the victim took to mean defendant's gang, Eastside Trece. Defendant then drove away. The victim drove to the next block and called 911. In the 911 call, the victim told the operator he knew defendant's wife and where she live[d].

---

[2] Defendant was convicted in another case for concealing a dirk, and that case was consolidated on appeal with the assault with a deadly weapon case, as we will discuss *post*. We do not discuss the facts of the concealed dirk case, as that case is not relevant to the issues in this appeal.

"Shortly after the incident, the victim spoke with a responding officer. He told the officer he recognized defendant and thought the crash had something to do with an earlier altercation, involving the victim, defendant, and other Sureño gang members.

"A couple of months before the assault with a vehicle, the victim was dropping off his cousin, who associates with Norteños, when a car pulled up and a group of what looked to be gang members, including defendant, got out of the car and 'started talking gang shit.' The group hurled insults related to Northerners at both the victim and his cousin. At some point, a security guard showed up and 'kicked everyone out.'

"The victim had previously associated with southern gangs, but because his family members are Northerners, he now associates with Northerners. The victim testified, '[S]ince they seen me with him, . . . they thought I was affiliating with Northerners now, too.' He also testified that he thought defendant felt disrespected.

"The victim testified about other altercations. In 2006, he was present when a group of Southerners he associated with were in a fight with a Northerner — though he claimed he was not part of the fight. In 2010, the victim was in a fight with an Eastside Trece member. He explained that several Eastside Trece members had approached him, and he defended himself. An officer who responded to the 2010 incident testified the victim had been in a fight with several Eastside Trece members and hit one of them with a tire iron.

"An officer who was also involved in the concealed dirk case testified about contacts he personally had with defendant in 2005, 2007, and 2009. During the first two contacts, defendant admitted his involvement in the Sureño gang. The officer had also found 'gang music' during a search of defendant's bedroom and, in 2007, defendant had a 'EST' tattoo on his head." (Footnotes omitted.)

*Trial Court Proceedings*

On May 9, 2014, the jury found defendant guilty of two counts of assault with a deadly weapon (a car) (§ 245, subd. (a)(1); counts 1 and 2) and found both were done for

4

the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b).) It also found defendant guilty of driving on a suspended license. (Veh. Code, § 14601.2, subd. (a); count 4). (*Bermudez I*, *supra*, 45 Cal.App.5th at p. 365.)

On October 3, 2014, the trial court sentenced defendant on count 1 in the assault case to the upper term of four years, doubled for the prior strike, plus five years for the gang enhancement (§ 186.22, subd. (b)(1)). It also imposed a five-year prior serious felony enhancement (§ 667, subd. (a)) and a two-year on-bail enhancement (§ 12022.1, subd. (b)). A one-year prior prison term enhancement was stayed pursuant to section 654. Concurrent terms of eight years for the other assault count, plus five years for the gang enhancement, and 180 days for driving on a suspended license, were also imposed. (*Bermudez I*, *supra*, 45 Cal.App.5th at p. 365.)

*Consolidated Appeal*

In 2014, we consolidated appeals from defendant's assault case and his concealed dirk case. We modified the judgment to strike the one-year prior prison term enhancement (§ 667.5, subd. (b)), and remanded the matter to the trial court for consideration of whether to exercise its discretion under Senate Bill No. 1393 to strike the five-year prior prison term enhancement. (*Bermudez I*, *supra*, 45 Cal.App.5th at p. 378.)

*Proceedings Following Remand*

On January 4, 2022, the trial court held a hearing on defendant's request to strike the five-year prior prison term enhancement. Following briefing and defendant's testimony on his current situation, the trial court declined to strike the prior prison term enhancement. We will discuss that ruling in greater detail, *post*.

The trial court sentenced defendant in the assault case to the upper term of four years, doubled for the prior strike, on count 1, plus five years for the gang enhancement. It sentenced defendant to an identical sentence on count 2 to be served concurrently, and

5

consecutive terms of two years for the on-bail enhancements and five years for the prior serious felony enhancement.

Defendant timely filed a notice of appeal. The case was fully briefed in August 2022, and assigned to this panel on August 31, 2022. The parties waived argument and the case was deemed submitted on November 1, 2022.

## DISCUSSION

### I

### *Senate Bill No. 1393*

Defendant contends the trial court abused its discretion by applying the wrong standard when declining to strike the five-year prior serious felony enhancement (§ 667, subd. (a)) on remand. As we next explain, we agree.

A. *Procedural Background*

In 2014, at defendant's original sentencing, the trial court imposed a five-year enhancement based on his prior serious felony conviction. That conviction stemmed from defendant's 2005 conviction for possession of a billy club (former § 12020, subd. (a)(1)), which was rendered a serious felony by virtue of defendant's admission that he carried the club due to a fear of conflict with rival gang members (§ 1192.7, subd. (c)(28), 186.22, subd. (b)(1)). At the time of defendant's sentencing, the trial court denied his request to strike the prior strike pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, and lacked discretion to separately consider whether to decline to impose the additional five-year term.

In denying defendant's *Romero* motion, the trial court recognized that neither passenger of the victim's car had been injured, but observed that using a car to commit an assault has the potential to cause serious injury. The court then noted that defendant had previously performed poorly on probation and had violated the terms of his parole on multiple occasions. Finally, the court credited defendant for working, although it recognized that his work history was sporadic, and it declined to ascribe significant

6

weight to the fact that defendant is a father because there was no mention of his participation in the lives of his children.

Following remand from his initial appeal, defendant filed a motion to dismiss the five-year enhancement pursuant to section 1385, as amended by Senate Bill No. 1393, citing the nature and circumstances of the present felony and his behavior postconviction as reasons to grant the motion. The prosecution opposed the motion, citing the nature and circumstances of the present felony, defendant's criminal history, and defendant's behavior in prison as reasons to deny the motion.

On January 4, 2022, defendant testified at a hearing on his motion to dismiss the five-year enhancement. Defendant testified about his postconviction conduct, including answering questions from the court. Before going to prison, defendant was certified in welding (RT 49), and he obtained his GED while incarcerated. He worked in the prison kitchen and was taking college courses with the goal of getting a business degree. He took multiple self-study classes, including Narcotics Anonymous, Alcoholics Anonymous, GOGI ("Getting Out by Going In"), and parenting programs. Since 2018, defendant was on the waitlist for rehabilitative programs for people with prior gang history. Defendant acknowledged he had not dropped out of the gang, but testified he was not "associated" with any criminal gangs in prison.

The prosecutor argued that defendant had repeatedly been denied release by the Board of Parole Hearings (BPH), in part because of his "very limited" progress with self-help and education. She noted that there appeared to be multiple classes available to defendant, but that he had failed to avail himself of those. She also observed that defendant had two rules violations in prison for possessing cellphones and may have had other violations, although that information was confidential. She recognized that the California Department of Corrections and Rehabilitation (CDCR) had not requested reduction of his sentence. Finally, she argued that the facts of the instant case were

7

serious, defendant was on probation at the time of the crime, he was a longstanding gang member, and he had not disassociated from the gang.

Defendant acknowledged that cellphone rules violations were serious, but noted he had no violent rules violations while incarcerated. He observed that while the BPH had denied him release, its decisions characterized his criminal record to be mitigating and fairly minimal and remote in time. He asserted that he had been participating in educational and rehabilitative classes and had been working since he went to prison. He further argued that the instant crime involved a car striking another car (as opposed a bicycle or pedestrian), no one was injured, and he had not been aware of the presence of a young child in the car at the time of the crime.

The trial court denied defendant's request to strike the five-year enhancement. It ruled: "[T]he higher courts and the [L]egislature have permitted the Court to use discretion in deciding whether a five-year prior should be imposed under 667[, subd.] (a)(1) of the Penal Code and whether failure to exercise discretion at a time when it was not allowed should be reconsidered upon remand -- upon remittitur, and that's where we are today.

"I've had a number of cases with similarities to this since that authority has been granted to the Court, and I've heard a wide range of accounts of things that inmates have done or haven't done while they've been in custody. In my mind, it's important that inmates seek out and participate in as many educational opportunities as they can to help them be better prepared to return to society in a way that they're not as likely to engage in criminal conduct or make bad decisions in the future.

"If there's vocational training available, it's helpful or important to participate in that to obtain skills that are translatable into employment when one leaves prison. It's important to participate in programs.

"The -- what I've heard in this case is nowhere near the top of the spectrum of people I've seen doing things positively in prison. I'm -- I'm -- I commend [defendant]

8

for doing what he's done, but for seven-plus years in prison, I can't say your list of achievements is all that impressive. I hope you're really serious about wanting to pursue these things and you make an effort to do that.

"I -- I believe that it's true to a certain extent that there are limitations about what is available at what times of sentences, but I've seen a number of people who have done remarkably many things -- many more things than what I heard about what you've done in seven years -- that is far more impressive than what I've heard from you.

"Again, I commend you for the efforts you're making, but I urge you to work even harder. I've had a number of cases where [CDCR] has said, 'Look at what this person has been doing. We think you ought to exercise discretion. We think you ought to reduce their sentence.' And they do have a list of what they've been doing.

"That didn't happen with you, and I expect, seeing what I've seen and hearing what I've heard, there's a reason they didn't do that, because you don't -- you haven't risen to the top of those seeking to get those beneficial breaks. I do not find it would be an appropriate exercise of my discretion to strike the five-year prior, and I will not do that."

The trial court concluded: "I really hope that you -- you do more -- you push yourself to do more, and that we do hear from [CDCR] within a year or two or several saying, '[defendant] has done so well, we think he should get a break from the Court.' [¶] But I don't think you've earned that yet, and so I -- your -- your request to strike the five-year enhancement is denied."

C. *Legal Background*

Senate Bill No. 1393 amended sections 667, subdivision (a) and 1385, subdivision (b) to allow trial courts to exercise their discretion to strike or dismiss a five-year enhancement for a prior serious felony conviction "in furtherance of justice." (Stats. 2018, ch. 1013, § 2.) Case law and legislative history indicate that courts "must evaluate the nature of the offense and the offender" in deciding whether to strike a five-year

9

enhancement, and we review the trial court's decision for abuse of discretion. (*People v. Shaw* (2020) 56 Cal.App.5th 582, 586 (*Shaw*); *People v. Brugman* (2021) 62 Cal.App.5th 608, 638-639.) "Section 1385 allows courts to ensure 'that persons are sentenced based on the particular facts of the offense and all the circumstances. It enables the punishment to fit the crime as well as the perpetrator.' " (*Shaw*, at p. 587.) "No error occurs if the trial court evaluates all relevant circumstances to ensure that the punishment fits the offense and the offender." (*Ibid.*) The trial court must evaluate "the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*People v. Williams* (1998) 17 Cal.4th 148, 161; see *Shaw*, at p. 587 [finding additional support for interpretation of scope of discretion under § 1385, subd. (b) from cases interpreting identical " 'in furtherance of justice' " language in § 1385, subd. (a)].)

"The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

D. *Analysis*

Defendant contends the trial court abused its discretion by failing to evaluate the nature of the offense and the offender (*Shaw*, *supra*, 56 Cal.App.5th at p. 586; *People v. Brugman*, *supra*, 62 Cal.App.5th at pp. 638-639), and instead basing its decision on its conclusion that defendant had not yet "earned" a reduction in his sentence. He asserts the court's ruling demonstrates that it treated his motion as a request to *reduce* a sentence after a recommendation by CDCR under former section 1170.03, which authorized the trial court to resentence a defendant in several circumstances, including "[w]hen an inmate demonstrate[d] exceptional conduct as defined in subsection (b)(1)." (Cal. Code

10

Regs., tit. 15, § 3076.1, subd. (a)(1).)[3]  Title 15, section 3076.1, subsection (b)(1), in turn, provides that an inmate may be considered for recommendation for resentencing where the inmate has not been found guilty of a serious or violent rules restriction within the previous five years, and where the inmate has participated in rehabilitative programming. (Tit. 15, § 3076.1, subd. (b)(1), (2)(C).)  Under former section 1170.03 the court may "reduce" a defendant's term of imprisonment where circumstances have changed since the original sentencing, such that the original sentence is no longer in the interest of justice.  (Former § 1170.03, subd. (a)(3).)  In making that determination, the court is permitted to consider postconviction factors, including the inmate's disciplinary record and record of rehabilitation while incarcerated.  (*Id.*, subd. (a)(4).)

Disagreeing, the Attorney General observes that both defendant's motion and the prosecution's opposition discussed the relevant standard, the nature and circumstances of the present felonies, and defendant's postconviction performance in prison, and the prosecution addressed defendant's prior criminal history.  The Attorney General further notes that the trial court stated that it had read and considered defendant's motion and the prosecution's opposition and that the court is presumed to have acted to achieve legitimate sentencing objectives.

Although we do not disagree regarding the relevant presumption (see *People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["The court is presumed to have considered all of

_____

[3] Further undesignated regulation references are to title 15 of the California Code of Regulations (Title 15).

On June 30, 2022, the Legislature passed Assembly Bill No. 200 (2021-2022 Reg. Sess.) which, among other things, renumbered section 1170.03 as section 1172.1, with no change in the text. (Stats. 2022, ch. 58, § 9.)  Title 15, section 3076.1's title continues to refer to section 1170.03.  For purposes of clarity and for consistency with the law at the time the trial court rendered its decision, we will continue to refer to former section 1170.03.

11

the relevant factors in the absence of an affirmative record to the contrary"]), we next examine whether it has been rebutted here. At the outset, we acknowledge that the trial court noted that it had read the parties' briefing and that it listened to the parties' arguments; we must therefore presume the court considered the relevant factors. We further acknowledge that the court expressly recognized that it had discretion "in deciding whether a five-year prior should be imposed," and it ultimately denied defendant's "request to strike the five-year enhancement." However, the substance of the trial court's ruling clearly demonstrates it did not expressly state or apply any of the relevant factors on the record. (See *People v. Williams*, *supra*, 17 Cal.4th at p. 161; *Shaw*, *supra*, 56 Cal.App.5th at p. 587.) Unlike the trial court's ruling on defendant's *Romero* motion at the original sentencing, here the court did not discuss or even acknowledge the nature and circumstances of the present felonies, the prior serious felony conviction, or the particulars of defendant's background or character. To the extent the court addressed defendant's prospects, it was only in the context of what defendant had accomplished while incarcerated. Indeed, the court's entire focus was on the need to increase achievements during incarceration to "rise[] to the top" of those *prisoners* seeking "breaks."

The trial court began by observing that it had considered "a number" of similar cases, and it emphasized the importance of inmates' seeking out educational and vocational training. The court asserted that defendant's achievements in prison were "nowhere near the top of the spectrum" of inmates' achievements in prison and stated that defendant's achievements were not "all that impressive." It then encouraged defendant to "work even harder," apparently to convince CDCR to recommend that the court "reduce" his sentence. (See former § 1170.03, subd. (a)(1) [upon recommendation of CDCR, the court may recall and resentence defendant], id., subd. (a)(3)(A) [The resentencing court may, in the interest of justice, "[r]educe a defendant's term of imprisonment by modifying the sentence"].) The court opined that defendant had not

12

"risen to the top of those seeking to get those beneficial breaks," and noted that it hoped CDCR would tell the court in one, two, or several years that defendant "should get a break from the court." As it stood, the court concluded, defendant had not yet "earned" that "break."

We recognize that our task is not to reweigh the factors considered by the trial court. However, the court's ruling had little, if anything, to do with the relevant inquiry under section 1385. Aside from our presumption that the court understood and correctly applied the law, there is nothing in the trial court's ruling that suggests the court knew and applied the correct standard. Indeed, the court's own statements, which strongly indicate that it was ruling on a motion not before it, rebut the presumption.[4] Accordingly, we agree with defendant that the trial court abused its discretion by failing to apply the correct standard for determining whether to exercise its discretion to strike the five-year prior serious felony enhancement. We reverse the trial court's order denying defendant's motion, and remand the matter for reconsideration. We take no position on whether defendant is entitled to relief.

II

*Assembly Bill No. 333*

Defendant asserts that Assembly Bill No. 333 should be applied retroactively to his case and that, under the law as amended, there is insufficient evidence to support imposition of the gang enhancements under section 186.22, subdivision (b). He asks us

---

[4] We further note that the trial court's denial of defendant's *Romero* motion does not necessarily indicate that he is not entitled to relief under Senate Bill No. 1393. The inquiry in *Romero* is whether defendant fell outside the spirit of the three strikes law. (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1033.) The inquiry here is different: whether, in the interest of justice, the five-year prior serious felony enhancement should be stricken. (*Ibid.*)

to strike the true findings on these enhancements and remand the matter to the trial court for possible retrial.

The Attorney General concedes that defendant is entitled to the ameliorative effects of Assembly Bill No. 333's amendments to section 186.22 because his judgment was not final when the new legislation took effect. But the Attorney General contends remand is unnecessary because it is clear beyond a reasonable doubt that the jury would have found true the gang enhancement allegations under the statute as amended by Assembly Bill No. 333.

At the outset, our Supreme Court recently concluded that the ameliorative benefit of Assembly Bill No. 333 applies to all cases not yet final on appeal. (*People v. Tran* (2022) 13 Cal.5th 1169, 1238.) This includes defendant's case.

As we next explain, we agree with defendant that remand is required.

A. *Statutory Framework*

Section 186.22 provides for enhanced punishment when a person is convicted of an enumerated felony committed "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members." (§ 186.22, subd. (b)(1).) Prior to the enactment of Assembly Bill No. 333, a " 'criminal street gang' " was defined as "any ongoing organization, association, or group of three or more persons . . . whose members *individually or collectively* engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, former subd. (f), italics added.) Effective January 1, 2022, Assembly Bill No. 333 narrowed the definition of " 'criminal street gang' " to be "an ongoing, organized association or group of three or more persons . . . whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f), as amended by Stats. 2021, ch. 699, § 3, eff. Jan. 1, 2022, italics added.)

Assembly Bill No. 333 also altered the requirements for proving the "pattern of criminal gang activity" necessary to establish the existence of a criminal street gang. Before Assembly Bill No. 333 was enacted, former section 186.22, subdivision (e) only required the prosecution to prove " 'that those associated with the gang had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another.' " (*People v. E.H.* (2022) 75 Cal.App.5th 467, 477 (*E.H.*).) "Assembly Bill [No.] 333 made several changes to this definition. First, the predicate offenses now must have been committed by two or more 'members' of the gang (as opposed to any persons). (§ 186.22, subd. (e)(1).) Second, the predicate offenses must be proven to have '*commonly* benefited a criminal street gang.' (*Ibid.*, italics added.) Third, the last predicate offense must have occurred within three years of the date of the currently charged offense. (*Ibid.*) Fourth, the list of qualifying predicate offenses has been reduced. (*Ibid.*) And fifth, the currently charged offense no longer counts as a predicate offense. (§ 186.22, subd. (e)(2).)" (*E.H.*, at pp. 477-478.)

Assembly Bill No. 333 further requires that the prosecution must prove the benefit the gang derives from the predicate offenses is "more than reputational." (§ 186.22, subd. (g); Stats. 2021, ch. 699, § 3.) Section 186.22, subdivision (g) now explains: "[T]o benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."

C. *Gang Expert Testimony*

1. *Eastside Trece Gang Background*

Detective Dana Tello testified as both an investigating officer and as an expert on gangs and gang culture. She was familiar with the Eastside Trece gang, one of the predominant Southern gangs in Yolo County. Eastside Trece originated in Los Angeles

15

and is a "set" of the Sureños. It had about 30 validated members in Yolo County. The majority of Eastside Trece members lived in the Yolano/Donnerly area, and some in Woodland. Sureños fight with Norteños and with other Sureño sets. Southerners have associates, who associate with gang members but typically do not commit crimes with the gang, and active and non-active gang members, both of whom have been validated.

Eastside Trece members wear the color blue and the number 13, and have tattoos representing the number 13. A large "EST" tattoo on the back of the head indicates that the member is a high-ranking member of the gang and has earned the tattoo by committing crimes for the gang; defendant is one of the only three Sureños in Yolo County with that tattoo. Tello considered defendant to be a decisionmaker for the Eastside Trece gang, and someone other individuals would follow.

Tello testified that respect is one of the most important aspects of gang life. Respect is really fear or intimidation, and any disrespect is handled, often with violence. Gangs created fear and intimidation in their communities by committing violent crimes, which paralyzes the community and allows the gang to commit crimes without law enforcement involvement. Snitching on anybody, even on rival gang members, is dealt with.

2. *Predicate Offenses*

Detective Tello testified that one of Eastside Trece's primary activities is the commission of criminal offenses. The gang commits assaults, burglaries, robberies, drug and weapon offenses, and grand theft. Tello identified five predicate offenses committed by members of Eastside Trece based on incidents with which she became familiar by reviewing prior reports and talking to other detectives.

The first predicate offense was committed by Gonzalo Valencia, who was convicted of "assault to commit mayhem as well as a gang enhancement" related to a drive-by shooting committed in on September 10, 2008. Valencia drove a vehicle that distracted the victims in a park, and the passenger of a second vehicle shot at a rival in

16

the park. Valencia and the driver of the other car were active participants in the Eastside Trece gang.

The second predicate offense occurred on December 8, 2011, when Alex Iberra and Aldo Valeriano were convicted of burglary, conspiracy, and a gang enhancement. The facts behind the case involved a burglary and attempted sale of two stolen rifles. Iberra and Valeriano were validated members or associates of the Eastside Trece gang.

The third predicate offense involved Philipe Reyes, who was convicted of possessing stolen property and a gang enhancement. Reyes, who was an active member of Eastside Trece, and four other Sureños confronted the victim, pulled a knife, and robbed him of a cell phone and cash.[5]

The fourth predicate offense occurred on September 28, 2011, when officers searching a vehicle driven by Eastside Trece member Efring Gonzalez found two handguns, one of which had been stolen from a burglary. Gonzalez was convicted of possession of a concealed weapon and a gang enhancement.

Finally, Eastside Trece member Francisco Nava was convicted of attempted murder and discharge of a firearm related to conduct occurring on August 8, 2012. A Norteño gang member was suspected of throwing a brick through Nava's window, and Nava later shot the man with birdshot from a shotgun.

### 3. *Charged Felonies*

Detective Tello testified as to her opinion that defendant's conduct was a gang-related activity. She testified: "My opinion is that it was done in retaliation of the disrespect that [defendant] received during a contact between [the victim] months prior to this actual crime that occurred. [¶] As well as my opinion is that because [the victim] was -- had disrespected another gang member in a fight, altercation, that happened [with

---

[5] Tello did not testify as to the date of this offense, and she did not testify that these other Sureños were Eastside Trece members.

17

another validated Eastside Trece member], I believe that that's my opinion and reasoning why it was a gang-related crime."

Tello also testified as to her opinion that defendant's crimes were committed with the specific intent to benefit the Eastside Trece gang. She testified: "Since this crime was done in broad daylight, and [defendant] yelling EST as well as pointing to it, that was obviously visible at that time. [¶] It just, again, puts that fear into the community once again. If anybody from that intersection saw that and heard what [defendant] had stated, I think it just reiterates that fear, intimidation, in that respect that [Eastside Trece] will receive from anybody who saw that."

The detective reiterated that it is "[a]bsolutely" important to the gang to maintain respect in the community. She continued: "Again, the fear and intimidation results to respect that these individuals get, the more violent they are in front of the community, the community sees this, the more fear they place into the community, paralyzing them to do anything about crimes that are committed. [¶] So when individuals, communities, see crimes that occur that these [Eastside Trece] gang members are committing, they're not likely to contact law enforcement in fear of retaliation. So they don't contact us."

D. *Analysis*

The Attorney General acknowledges that the jury was not instructed on the elements required to prove a gang enhancement as required following the enactment of Assembly Bill No. 333, but he argues that remand is unnecessary because it is clear beyond a reasonable doubt that the jury would have found (beyond a reasonable doubt) that the gang enhancement allegations as amended by Assembly Bill No. 333 were satisfied. We disagree.

When a jury does not determine all elements of a charged offense because the instructions omitted an element of the charged offense, the resulting prejudice is assessed under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). (*People v. Flood* (1998) 18 Cal.4th 470, 491 (*Flood*).) We apply this same standard of

18

review when the jury was not instructed on an element because trial occurred before the effective date of the amendment adding the element. (See *People v. Wright* (2006) 40 Cal.4th 81, 98-99.) The inquiry under this standard " 'is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.' [Citation.] This standard is much higher than substantial evidence review. For example, courts have found harmless error under the *Chapman* standard where the missing element from an instruction was uncontested or proved as a matter of law." (*E.H.*, *supra*, 75 Cal.App.5th at p. 479-480.) But where " 'the basis of the jury's verdict is not so clear,' " such as where "the prosecution presented evidence of both financial and reputational benefit, 'we cannot rule out the possibility that the jury relied on reputational benefit to the gang as its basis for finding the enhancements true.' " (*Id.* at p. 480.)

On this record, we conclude the omission from the jury instructions was not harmless beyond a reasonable doubt. Although there was *some* evidence supporting the requirement that the predicates were committed for the common benefit of the gang, this element was not proved as a matter of law. (See *E.H.*, *supra*, 75 Cal.App.5th at p. 479 [where the prosecution presented evidence of both financial and reputational benefit, the omission was not harmless error].) First, the jurors were permitted to consider the current offenses in determining whether the prosecution had proven a pattern of criminal gang activity, and they were not required to find the predicate offenses benefitted the gang in a way that was not reputational. Second, the prosecution was not required to prove, and the jury was not asked to find, that the predicate offenses commonly benefitted Eastside Trece in a way that was more than reputational. Third, the jury was not asked to find that the most recent predicate crime was committed within three years of the charged offenses.

We understand the Attorney General's argument that there was evidence presented that would have permitted the jury, were it asked to do so, to find the prosecution had

satisfied the standard of proof under section 186.22 as amended by Assembly Bill No. 333. However, "To rule that the existence of evidence in the record that would permit a jury to make a particular finding means that the jury need not actually be asked to make that finding would usurp the jury's role and violate [defendant's] right to a jury trial on all the elements of the charged allegations." (*People v. Lopez* (2021) 73 Cal.App.5th 327, 346; see *People v. Sek* (2022) 74 Cal.App.5th 657, 668-669 [presentation of evidence that benefit to the gang was more than reputational does not rule out possibility that jury relied on reputational benefit as the basis for finding gang enhancements true].) As we have discussed, our inquiry is not whether there is sufficient evidence to satisfy the standard of proof under the law as amended, but rather whether it is clear beyond a reasonable doubt that the verdict was not attributable to the error. We cannot say on this record that the jury did not reach its verdict in part based on evidence that would no longer support a conviction under the law as amended.

Because we are unable to rule out the possibility that the jury relied on the reputational benefit to the gang as the basis for finding the requirement to show predicate offenses was satisfied, or that it considered the currently charged offense in determining that the pattern of criminal gang activity requirement was satisfied, we vacate the gang enhancement and remand to the trial court to provide the prosecution with the opportunity to prove the gang enhancement under the law as amended, should it choose to attempt to do so. (See *E.H.*, *supra*, 75 Cal.App.5th at p. 480 ["The proper remedy for this type of failure of proof–where newly required elements were 'never tried' to the jury–is to remand and give the People an opportunity to retry the affected charges"].)[6]

---

[6] Because reversal of the gang enhancements and remand for their potential retrial is required, we need not decide whether any of the other new elements of section 186.22 were, or were not, met and whether other aspects of the instruction given were erroneous. Specifically, we note that the parties have pointed out a split of authority regarding whether predicate offenses may be committed solely by an individual gang member.

IV

*Restitution Collection Fee*

Defendant requests that we strike a $30 restitution collection fee, or 10 percent of the restitution fee, that was imposed by the trial court in 2014. He initially contends that Senate Bill No. 425 (2007-2008 Reg. Sess.) clarified that penalty assessment and surcharge provisions do not apply to restitution fines, although he acknowledges in his reply brief that position is incorrect. Instead, in his reply brief, defendant contends that the restitution collection fee must be stricken because it is no longer authorized by section 1202.4.

The Legislature enacted Assembly Bill No. 177, which eliminated a range of administrative fees that agencies and courts were authorized to impose in addition to eliminating outstanding debt incurred as a result of the administrative fees. (Stats. 2021, ch. 257, § 2, eff. Sept. 23, 2021.) Under this legislation, the balance of court-imposed costs pursuant to section 1202.4 "shall be unenforceable and uncollectible" on or after January 1, 2022. (Stats. 2021, ch. 257, § 35; § 1465.9, subd. (b).) We strike the balance of this fee.

**DISPOSITION**

The gang enhancements as to counts 1 and 2 are stricken and the trial court's denial of defendant's motion to strike the five-year prior serious felony enhancement is

---

(Compare *People v. Delgado* (2022) 74 Cal.App.5th 1067, 1089 ["[T]he prosecution could meet [the requirement to show that two predicate offenses were committed on separate occasions or by two or more members] by proving two gang members individually committed the predicate offenses on two separate occasions or two gang members collectively committed two predicate offenses on the same date"] with *People v. Clark* (2022) 81 Cal.App.5th 133, 145-146, review granted Oct. 19, 2022, S275746 [pattern of gang activity may be established by "(1) two gang members who separately committed crimes on different occasions, or (2) two gang members who committed a crime together on a single occasion"].) Recently, our Supreme Court expressly declined to resolve this split. (*People v. Tran, supra,* 13 Cal.5th at p. 1239.)

reversed. We remand to the trial court to reconsider defendant's motion to strike the five-year prior serious felony enhancement and to provide the prosecution with the opportunity to retry defendant on the gang enhancement allegations. Because we have stricken part of the sentence, following retrial on the gang enhancement or after the prosecution has declined to retry the allegations, in addition to reconsidering its ruling on the five-year prior serious felony enhancement, we direct the trial court to conduct a full resentencing as to all counts, so that it may exercise its sentencing discretion in light of any changed circumstances. (*People v. Buycks, supra,* 5 Cal.5th at p. 893.) During resentencing, the trial court shall exercise its discretion in light of any legislative changes and may "revisit all prior sentencing decisions when resentencing" defendant, including recent changes to the law under Senate Bill No. 567. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425.) The court has a "duty . . . to ensure that all components of [a] sentence are authorized by the law and the facts at the time any new sentence is imposed." (*People v. Walker* (2021) 67 Cal.App.5th 198, 206).

Finally, we strike the unpaid balance of the 10 percent collection fee, as of January 1, 2022, which had been imposed under former section 1202.4, subdivision (*l*).

The judgment is otherwise affirmed.


                                                           /s/
                                        Duarte, Acting P. J.

We concur:


   /s/
Hoch, J.


   /s/
Renner, J.